1  Michele R. Stafford, Esq. (SBN 172509)
   TUCKER ARENSBERG, LLP
2  1098 Foster City Boulevard, Ste. 106 #700
   Foster City, CA  94404
3  Telephone: (650) 514-6238
   Email: mstafford@tuckerlaw.com
4

5  Attorneys for Plaintiffs, Arkansas Pipe Trades Health and Welfare Fund, et al.

6

7                    UNITED STATES DISTRICT COURT

8            FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10 ARKANSAS PIPE TRADES HEALTH AND        Case No.: 8:24-cv-01894-DFM
   WELFARE FUND, et al.,
11                                         **NOTICE OF MOTION AND MOTION**
              Plaintiffs,                  **FOR DEFAULT JUDGMENT;**
12                                         **MEMORANDUM OF POINTS AND**
        v.                                 **AUTHORITIES IN SUPPORT**
13                                         **THEREOF**

14 STILES CONSULTING FIRM, LLC *dba*
   STILES FOODSERVICE AND STAINLESS        Date:  Tuesday, April 29, 2025
15 INSTALLATION, a California Corporation; and  Time: 10:00 a.m.
   COREY STILES, individually,             Ctrm:  6B, 6th Floor
16                                         411 W. Fourth St., Santa Ana, CA 92701
              Defendants.                   Judge:  Honorable Douglas F. McCormick
17

18

19       To Defendant STILES CONSULTING FIRM, LLC *dba* STILES FOODSERVICE AND

20 STAINLESS INSTALLATION, a California Corporation and Defendant COREY STILES,

21 individually:

22       PLEASE TAKE NOTICE that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure,

23 Plaintiffs Arkansas Pipe Trades Health and Welfare Fund, et al. ("Plaintiffs") will and hereby do move

24 for a default judgment against Defendant STILES CONSULTING FIRM, LLC *dba* STILES

25 FOODSERVICE AND STAINLESS INSTALLATION, a California Corporation and Defendant

26 COREY STILES, individually, and in Plaintiffs' favor in this matter. A hearing shall be conducted on

27 Tuesday, April 29, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the

28

                                          1

Honorable Douglas F. McCormick, at the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. Fourth Street, Courtroom 6B, 6th Floor, Santa Ana, CA 92701.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, and the Declarations of Michele R. Stafford,  Ricky Jeu, Paula Bruner and Jonathan Graham filed concurrently herewith, in support of Plaintiffs' Motion.

Dated: March 25, 2025                                    TUCKER ARENSBERG, LLP


                                         By:    _/s/ Michele R. Stafford_____
                                                Michele R. Stafford, Esquire
                                                Attorneys for Plaintiffs, Arkansas Pipe Trades
                                                Health and Welfare Fund, et al.

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No.: 8:24-cv-01894-DFM**

# TABLE OF CONTENTS

I. STATEMENT OF RELIEF SOUGHT ..................................................................1

II. FACTS ...............................................................................................................2

    A. Factual Background ..................................................................................2

        1. Defendant Stiles Consulting is bound to the terms of the Collective Bargaining Agreement and the Trust Agreements for the Plaintiff Trust Funds ...................2

        2. Defendant Stiles Consulting is liable for the amounts due herein ........................2

            (a) Contributions and Related Amounts Due ..................................................4

III. PROCEDURAL HISTORY ...............................................................................5

IV. LEGAL ARGUMENT .......................................................................................7

    A. The Court Has Jurisdiction Over the Subject Matter and Parties .............................7

    B. The Court is Authorized to Enter Default Judgment ...............................................7

        1. Legal Standard for Default Judgment ...................................................................7

        2. The Eitel Factors Weigh in Favor of Entering Default Judgment Against Defendant ........................................................................................................9

            (a) Plaintiffs Will Suffer Prejudice if Default Judgment is Not Granted ............9

            (b) The Likelihood of Plaintiffs' Success on the Merits of their Claim is Certain ........................................................................................................9

            (c) The Sum of Money at Stake is Reasonable, Well Documented, and Justified .......................................................................................................10

                i. Unpaid Contributions, Liquidated Damages, and Interest......................11

                ii. Attorneys' Fees and Costs of Suit........................................................12

            (d) No Dispute Concerning Material Facts Has Arisen.....................................12

             (e) Defendant's Default was Not Due to Excusable Neglect ............................13

             (f) A Decision on the Merits is Impossible ....................................................14

    C. Interest, Liquidated Damages, and Attorneys' Fees and Costs Must Be Awarded To Plaintiffs.........................................................................................14

1. Liquidated Damages and Interest Must be Awarded to Plaintiffs .................................................................................14

2. Attorneys' Fees and Costs of Suit Must Be Awarded to Plaintiffs .................................................................................15

   (a) Reasonableness of Hourly Billing Rate ..........................................17

   (b) Reasonableness of Hours Billed ..................................................19

   (c) Reasonableness of Total Attorneys' Fees Requested ..................19

D. Defendant Corey Stiles is Personally and Individually Liable for the Amounts Due Herein .................................................................................20

   1. Corey Stiles is the Alter Ego of Stiles Consulting LLC .....................................21

   2. Corey Stiles is a Fiduciary ..................................................23

IV.  CONCLUSION..........................................................................................24

**TABLE OF CONTENTS**
**Case No.: 8:24-cv-01894-DFM**

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

Aldabe v. Aldabe, 616 F.2d 1089 (9th Cir. 1980).............................................................7

Associated Vendors Inc. v. Oakland Meat Packing, Co. (1962) 210
    Cal.App.2d 825, 26 Cal.Rptr. 806.............................................................................22

Automotriz etc. de California v. Resnick 1957) 47 Cal. 2d 792 [306 P.2d
    1, 63 A.L.R.2d 1042] .................................................................................................22

Bd. of Trustees of Cal. Metal Trades v. Pitchometer Propeller,
    1997 WL 797922, at *2 (N.D. Cal. 1997)................................................................11

Blatt v. Marshall, 812 F.2d 810 (2d Cir. 1987)...............................................................23

Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,
    389 F. Supp. 2d 1222 (N.D. Cal. 2005) ...................................................................18

Bell v. Clackamas County, 341 F.3d 858 (9th Cir. 2003)................................................17

Cabrales v. County of Los Angels, 864 F.2d 1454 (9th Cir. 1988) .................................18

Central States Pension Fund v. Central Transp., Inc., 472 U.S. 559 (1985) .................17

Chalmers v. City of Los Angeles, 796 F.2d 1205 (9th Cir. 1986).................................18

Connors v. Paybra Mining Co., 807 F. Supp. 1242 (S.D. W. Va. 1992) ......................23

Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins.
    Co., 25 F.3d 743 (9th Cir. 1994) ................................................................16, 17, 19

D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379 (9th Cir. 1990) ...................19

Davis v. City and County of San Francisco, 976 F.2d 1536 (9th Cir. 1992).................18

Day v. SBC Disability Income Plan, 2008 WL 2783482 *2 (N.D. Cal. 2008)..............18

Draper v. Coombes, 792 F.2d 915 (9th Cir. 1986) ..........................................................7

Echague v. Metro Life Ins. Co., 69 F. Supp. 3d 990 (N.D. Cal. 2014) .........................19

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986)................................................... *passim*

Ferland v. Conrad Credit Corp., 244 F.3d 1145 (9th Cir. 2001)..........................17

Galgay v. Gangloff, 677 F. Supp. 295 (M.D. Pa. 1987), aff'd, 932 F.2d
    959 (3d Cir. 1991) ...............................................................................23

Halo Elecs. v. Bel Fuse, Inc., No. 2021-1861 (Fed. Cir. May 6, 2022) ...................21

Hensley v. Eckerhart, 461 U.S. 424 (1983)...................................................17

Horticultural Enterprises Corp., v. Allstate Ins. Co. 477 F. Supp. 161
    (9th Cir. 1979 .................................................................................21

Hyder v. Kemper Nat'l Services, Inc., 2007 U.S. Dist. LEXIS 45843 *14
    (N.D. Cal. 2007)..............................................................................18

Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech.
    Contractors, Inc., 875 F.2d 212 (9th Cir. 1989) ......................................9, 10, 14

Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,
    531 F. Supp. 2d 56 (D.D.C. 2008) .......................................................8, 20

Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration
    & Painting Co., 919 F. Supp. 2d 680 (D. Md. 2013) ........................................8

Int'l Painters & Allied Trades Indus. Pension Fund v. HG Pro. Painting
    Inc., 2011 WL 3744123, at *6 (D. Md. Aug. 23, 2011) ....................................16

Jordan v. Multnomah County, 815 F.2d 1258 (9th Cir. 1987)...............................16

Kerr v. Screen Extras Guild, 526 F.2d 70 (9th Cir. 1975)..................................17

King v. CIGNA Corp., 2007 U.S. Dist. LEXIS 94644 *8 (N.D. Cal. 2007) ...............18

Laborers' Combined Funds of Western Pa. v. Cioppa, 346 F. Supp. 2d 765;
    2004 U.S. Dist. LEXIS 26955 (W.D. Pa. 2004) .........................................23, 24

Laborers' Combined Funds of Western Pa. v. Parkins, 2002 U.S. Dist.
    LEXIS 20035; 28 Employee Benefits Cas. (BNA) 2391 (W.D. Pa. 2002) .........................23

Laguna v. Coverall N. Am., Inc., Civil No. 09-cv-2131-JM (BGS)
    (S.D. Cal. Jul. 26, 2011).....................................................................21

May v. MetLife, 2005 U.S. Dist. LEXIS 17783 *9 (N.D. Cal. 2005) ........................18

McGrath v. County of Nevada, 67 F.3d 248 (9th Cir. 1995)................................17

ii

Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464 (9th Cir. 2000)........................................18

Mesler v. Bragg Management (1985) 39 Cal. 3d 290)........................................21

Morales v. City of San Rafael, 96 F.3d 359 (9th Cir. 1996)........................................17, 20

Nw. Adm'rs, Inc. v. Albertson's Inc., 104 F.3d 253 (9th Cir. 1996) ........................................12, 15

Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.,
    746 F.2d 557 (9th Cir. 1984) ........................................14

Oster v. Std. Ins. Co. 768 F. Supp 2d 1026 (N.D. Cal. 2011) ........................................19

PMTA-ILA  Containerization Fund v. Rose, 1995 U.S. Dist. LEXIS
    10877 (E.D. Pa. 1995)........................................23, 24

PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp 2d 1172 (C.D. Cal. 2002) ........................................8, 9, 14

Phillip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494
    (C.D. Cal 2003)........................................13

S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418 (D. Md. 2005); Magruder
    Holding, Inc., 2017 WL 3129192, at *3 ........................................8, 20

Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995,
    (N.D. Cal. 2001)........................................13

Sheet Metal Workers Health & Welfare Tr. Fund v. Big D. Serv. Co.,
    876 F.2d 852 (10th Cir. 1989) ........................................15

TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915 (9th Cir. 1987) ........................................8, 12

Truong Giang Corp. v. Twinstar Tea Corp., No. C 06-3594 JSW,
    2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) ........................................11

Trustees on Behalf of Teamsters Benefit Trust v. Casey's Office Moving
    Services, 2007 WL 1031320 (N.D. Cal. 2007)........................................18

Trustees of Glaziers Loc. 963 Pension, Welfare, & Apprentice Funds
    v. Walker & Laberge Co., 619 F. Supp. 1402 (D. Md. 1985) ........................................16

Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1047 (9th Cir. 2000) ........................................17

Walters v. Statewide Concrete Barrier, Inc., 2006 WL 2527776, at *4
    (N.D. Cal. 2006)........................................9, 14

TABLE OF AUTHORITIES
Case No.: 8:24-cv-01894-DFM

Welch v. Metro Life Ins. Co., 480 F.3d 942 (9th Cir. 2007) ..........................................18

**STATUTES**

29 U.S.C. § 141 ..........................................................................................................7

29 U.S.C. § 151 ..........................................................................................................7

29 U.S.C. § 152(2) ......................................................................................................7

29 U.S.C. § 185 ..........................................................................................................7

29 U.S.C. § 1002(5) ....................................................................................................7

29 U.S.C. § 1002(21)(A) ...........................................................................................23

29 U.S.C. § 1104(a) ...................................................................................................24

29 U.S.C. § 1104(a)(1)(A)(1) ...................................................................................23

29 U.S.C. § 1132 ........................................................................................................7

29 U.S.C. § 1132(g)(2) ..........................................................................................9,10

29 U.S.C. § 1132(g)(2)(D) ...........................................................................12, 15, 17

29 U.S.C. § 1145 ....................................................................................................9, 10

**RULES**

Federal Rule of Civil Procedure 55(b)(2) ...................................................................8

TABLE OF AUTHORITIES
Case No.: 8:24-cv-01894-DFM

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

### I.    STATEMENT OF RELIEF SOUGHT

Plaintiffs, Arkansas Pipe Trades Health and Welfare Fund ("Welfare Fund"), Oklahoma State Pipe Trades Annuity Fund ("Annuity Fund"), United Association National Pension Fund ("Pension Fund"), Plumbers And Pipefitters International Training Fund ("International Training Fund"), and the United Association Plumbers and Pipefitters Local Union 155 ("Local 155" or "Union") (collectively, "Plaintiffs") seek entry of a judgment by default ordering Defendant Stiles Consulting Firm, LLC *dba* Stiles Foodservice and Stainless Installation, a California Corporation ("Defendant Stiles Consulting") and Defendant Corey Stiles, individually ("Defendant Stiles") to make payment of estimated contributions and working assessments for hours worked by their employees during the time period from September 2023 through December 2023. In accordance with ERISA § 502(g)(2), 29. U.S.C. 1132(g)(2), the terms of the Project Labor Agreement, Collective Bargaining Agreement, the relevant Trust Agreements, and the Trust Funds' Delinquency Procedures, Plaintiffs also seek to recover liquidated damages and interest incurred on all unpaid contributions, as well as attorneys' fees, and costs incurred in this action.

Defendant Stiles Consulting and Defendant Stiles (hereinafter collectively referred to as "Defendants") are currently indebted to Plaintiffs as follows:

| Fund | Estimated Contributions (9/23-12/23) | Interest (9/23-12/23) (through 7/31/24 ) | Liquidated Damages (9/23-12/23) | Subtotals (9/23-12/23) |
|---|---|---|---|---|
| Health & Welfare | $8,045.09 | $578.74 | $804.51 | $9,294.26 |
| Annuity | $736.73 | $46.86 | $73.67 | $857.26 |
| Pension | $8,552.13 | $739.11 | $837.14 | $9,947.61 |
| International Training Fund | $147.35 | $12.42 | $29.47 | $189.24 |
| Union Working Assessments | $2,019.45 | $0.00 | $0.00 | $2,019.45 |
| **SUBTOTALS:** | **$19,500.75** | **$1,377.13** | **$1,744.79** | **$22,622.67** |
| Attorneys' Fees (Robein, Urann, Spencer, Picard & Cangemi: 1/4/24-2/19/25): | | | | $14,349.25 |
| Attorneys' Fees (Tucker Arensberg: 7/3/24-3/14/25): | | | | $15,214.50 |
| Costs (Tucker Arensberg: 7/3/24-3/14/25): | | | | $2,445.33 |
| **GRAND TOTAL DUE:** | | | | **$54,631.75** |

(*See Declaration of Ricky Jeu* in Support of Motion for Default Judgment ["Jeu Decl."], at ¶ 27;

Attachment B; *Declaration of Jonathan Graham* in Support of Motion for Default Judgment ["Graham Decl."], at ¶¶ 15-16, *Declaration of Paula M. Bruner* in Support of Motion for Default Judgment ["Bruner Decl."], at ¶¶ 8-14 and *Declaration of Michele R. Stafford* in Support of Motion for Default Judgment ["Stafford Decl."], at ¶¶ 18-22, filed concurrently herewith.)

## II.    FACTS

### A.    Factual Background

#### 1.    Defendant Stiles Consulting is bound to the terms of the Collective Bargaining Agreement and the Trust Agreements for the Plaintiff Trust Funds

Effective February 17, 2023, Defendant Corey Stiles, the Manager and President of Defendant Stiles Consulting entered into a Project Labor Agreement. (Complaint [ECF. No. 1], at ¶ 11; *Jeu Decl.* at ¶ 3; *Graham Decl.* at ¶ 3; Exh. A). The Project Labor Agreement binds Defendant Stiles Consulting to the Construction Collective Bargaining Agreement ("Collective Bargaining Agreement") with the Mechanical Contractors' Association of Arkansas and the Union. (ECF. No. 1 at ¶ 12; *Graham Decl.* at ¶ 4; Exh. B-1; B-2; *Jeu Decl.* at ¶ 3). The Project Labor Agreement expires at the same time the Collective Bargaining Agreement expires. (*Graham Decl.* at ¶ 5; Exh. A-B-2). Defendant Stiles Consulting ratified the terms of the Project Labor Agreement and expressed his continued intent to be bound by submitting contribution report(s) and requesting additional Union members be dispatched through at least December 2023 (*Jeu Decl.* ¶¶ 6-7; *Graham Decl.* at ¶¶ 11-12). The Collective Bargaining Agreement automatically renews unless either party serves written notice upon the other sixty days prior to its expiration date requesting that it be amended or terminated (*Graham Decl.,* Exh. B-2, Article XVIII, section 18.1). No such notices were served or received by either party, and therefore the Project Labor Agreement and Collective Bargaining Agreement were extended through July 31, 2026. (*Id.*) The Collective Bargaining Agreement provides that Defendant Stiles Consulting shall comply with the Declarations of Trust establishing the Plaintiff Trust Funds. (*Graham Decl.* at ¶ 6; Exh. B-2, Article VII, Section 8.2).

#### 2.    Defendant Stiles Consulting is liable for the amounts due herein

As a signatory to the Project Labor Agreement and Collective Bargaining Agreement,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

Defendant Stiles Consulting is bound to their terms. (*Id.* at ¶¶ 3-5.) The Collective Bargaining Agreement and Declarations of Trust require Defendant Stiles Consulting to report and pay fringe benefit contributions to the Welfare Fund, the Oklahoma State Pipe Trades Annuity Fund ("Annuity Fund"), United Association National Pension Fund ("Pension Fund"), and the Plumbers And Pipefitters International Training Fund ("International Training Fund") (collectively the "Trust Funds") at an hourly rate for all Journeymen and Apprentices (*Id.* at ¶ 7, Exh. B-2, Article VII), and to pay working assessments to the Union (*Id.* at ¶ 7, Exh. B-2, Article XIII, Section 13.13 and Appendix A).

Pursuant to Article VII, Sections 8.1 and 8.3 of the Collective Bargaining Agreement, Defendant Stiles Consulting is required to report and remit payment for contributions to the Trust Funds and working assessments to the Union on a monthly basis, no later than the fifteenth (15th) of each successive work month. (*Id.* at ¶ 8).

The Collective Bargaining Agreement further provides that contributions shall be due at the following rates:

      (a)    $5.46 per working hour to the Welfare Fund (*Id.* at ¶ 9; Exh. B-2, Article XIII, Section 13.10 and Appendix A - Construction Wage Rates);

      (b)    $0.50 per working hour to the Annuity Fund; (*Id.* at ¶ 9; Exh. B-2, Article XIII, Section 13.17 and Appendix A - Construction Wage Rates);

      (c)    $7.10 per working Journeyman working hour and $2.42 per Apprenticeship working hour to the Pension Fund; (*Id.* at ¶ 9; Exh. B-2, Article XIII, Section 13.11 and Appendix: Revised Standard Form of Participation Agreement);

      (d)    $.10 per working hour to the International Training Fund; (*Id.* at ¶ 9; Exh. B-2, Article XIII, Section 13.9 and Appendix A - Construction Wage Rates);

      (e)    4% of the wages earned for Working Assessment (*Id.* at ¶ 9; Exh. B-2, Article XIII, Section 13.13 and Appendix A - Construction Wage Rates).

Finally, the Trust Funds are also entitled to recover all costs incurred in this collection matter under the Collective Bargaining Agreement, Plan Documents, and Trust Agreements, including attorneys' fees and costs (*Graham Decl.,* Exh. B-2, Appendix entitled Revised Standard Form of Participation Agreement, Section 5 (as to Pension Fund); *Bruner Decl.* at ¶ 9; Exh. B, Article III,

Section (c), para. 4).

Plaintiffs have incurred reasonable attorneys' fees and costs, which are detailed in the accompanying *Declaration of Michele R. Stafford* and the *Declaration of Paula Bruner,* filed concurrently herewith, in support of Plaintiffs' Motion for Default Judgment. (*Stafford Decl*. at ¶¶ 18-22; *Bruner Decl*. at ¶¶ 12-13)

### a.    Contributions and Related Amounts Due

The Trust Funds' Delinquency Procedures, provide that if a lawsuit is filed against a signatory employer that has failed to report contributions to the Trust Funds, the Trust Funds may estimate and assess the amount the Employer owes in contributions at its sole discretion, and may calculate interest, liquidated damages, and related charges based upon such estimate. (*Bruner Decl*. at ¶ 8; Exh. B, Article III, section (f)).

The Collective Bargaining Agreement and/or the Trust Funds' Delinquency Procedures provide that liquidated damages are assessed, and interest accrues on unpaid delinquent contributions as follows:

| Fund | Interest Rate | Liquidated Damages Rate | Authority |
|------|--------------|------------------------|-----------|
| Welfare Fund | 10% per annum (.8333% per month) | Greater of $750 or 10% | *Graham Decl.,* Exh. B-2, Article VII, Section 8.4; *Bruner Decl.,* Exh. B, Article III, Section (c), para. 1-3 |
| Annuity Fund | 10% per annum | Greater of $750 or 10% | |
| Pension Fund | 12% per annum | 10% | *Graham Decl.,* Exh. B-2, Appendix entitled Revised Standard Form of Participation Agreement, Section 5 |
| International Training Fund | 12% | 20% | *Graham Decl*., Exh. C, Article VI, Section 6 |
| Working Assessments | n/a | n/a | n/a |

Based on the Union's dispatch records, work histories obtained by the Union, and employee paycheck stubs indicating the hours worked by Defendants' employees during the unreported time period of September 1, 2023 through December 4, 2023, the Union's Business Manager, and Union Trustee Chairman Richard Jeu[1] estimated Defendant Stiles Consulting's unreported contributions and

---

[1] Mr. Jeu has since retired. Jonathan Graham has replaced him as the Business Manager.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

working assessments pursuant to the Delinquency Procedures and calculated the accruing interest and liquidated damages thereon, all totaling **$22,622.67**, as set forth below.

| Fund | Estimated Contributions | Interest (through 7/31/24) | Liquidated Damages | Subtotal | Interest Rate | Liquid. Dam. Rate |
|------|------|------|------|------|------|------|
| Welfare Fund | $8,045.09 | $578.74 | $804.51 | $9,428.34 | 10% p/a | 10% |
| Annuity Fund | $736.73 | $46.86 | $73.67 | $857.26 | 10% p/a | 10% |
| Pension Fund | $8,552.13 | $739.11 | $837.14 | $10,128.38 | 12% p/a | 10% |
| International Training Fund | $147.35 | $12.42 | $29.47 | $189.24 | 12% p/a | 20% |
| Working Assessments | $2,019.45 | $0.00 | $0.00 | $2,019.45 | n/a | n/a |
| *Subtotals:* | *$19,500.75* | *$1,377.13* | *$1,744.79* | | | |
| **TOTAL DUE:** | | | | **$22,622.67** | | |

*(Graham Decl., ¶¶ 15-16; Jeu Decl., ¶¶ 20-27; Attachments A-B)*

## III.    PROCEDURAL HISTORY

On or about December 19, 2023, Plaintiffs' Local Counsel, Paula Bruner, issued a demand letter to Defendant Stiles Consulting, to the attention of Defendant Stiles requesting submission of contribution reports and payments for hours worked by Defendant Stiles Consulting's employees during the months of September through November 2023 within 10 days (by December 30, 2023). (*Bruner Decl.* at ¶ 3; Exh. A) Defendants failed to respond. (*Id.*). Meanwhile, the Union contacted the employees to account for their hours worked for the period from September through mid-December 2023 and based on the work histories that they obtained, calculated the amounts due and provide a summary to Local Counsel. (*Graham Decl.* at ¶ 14; *Bruner Decl.* at ¶ 4).

On or about February 6, 2024, Plaintiffs' Local Counsel issued a final demand letter to Defendant Stiles Consulting, to the attention of Defendant Stiles, advising that as no response was received to the previous request for the delinquent contribution reports and payments, the Union determined the amounts due based on contacting the employees for the hours worked. (*Bruner Decl.* at ¶ 5; Exh. A ) The letter provides a breakdown of the Union's calculations, which were based on a total of 1,448 hours worked during the period from September 1, 2023 through December 4, 2023. (*Id.*). The letter was also sent to Defendants' third-party payroll company, DM Bookkeeping, Inc. (*Id.* at ¶ 6). Despite a request for an immediate response to the letter, Local Counsel received no response from

Defendants. (*Id.* at ¶ 5). However, DM Bookkeeping, Inc. did respond and represented that Defendant Stiles refused to authorize paying outstanding bills for Defendant Stiles Consulting, including delinquent contributions and working assessments, and that Defendant Stiles refused to authorize DM Bookkeeping, Inc. to issues W2s for its employees for the 2023 tax year. (*Id.* at ¶ 6.).

This matter was referred to Michele R. Stafford at Tucker Arensberg for purposes of filing a lawsuit in California (*Id.* at ¶ 7) in June 2024 (*Stafford Decl.* at ¶ 4). As part of the initial referral process, Ms. Stafford's office searched the Contractors State License Board ("CSLB") website for "Stiles Consulting Firm, LLC *dba* Stiles Foodservice and Stainless Installation." (*Id.* at ¶ 5; Exh. A). According to the CSLB database, Stiles Consulting Firm, LLC *dba* Stiles Foodservice and Stainless Installation had a suspended (now expired) Contractor's License number (1072874) for failures to comply with workers' compensation and a bond payout, and is under Liability Insurance, Contractors Bond and Employee/Worker Bond Suspensions. (*Id.*). Defendant Stiles is the sole individual included in the CSLB's personnel list for Defendant Stiles Consulting's Contractors' License. (*Id.*). His title is Responsible Managing Member (RMM), which is defined by the CSLB as the member who serves as a qualifier for an LLC. (*Id.*). Ms. Stafford's office also researched and reviewed Defendant Stiles Consulting's corporate filings. The most recent filing, on January 23, 2024 is a Statement of Information, which indicates that Defendant Stiles is the sole Manager or Member of Defendant Stiles Consulting and also serves as its Agent for Service of Process. (*Id* at ¶ 6; Exh. B.).

Plaintiffs filed a Complaint against Defendants on August 30, 2024 (ECF No. 1) to recover Defendants contribution reports and payments of amounts due for the months of September through December 2023, any unpaid contributions due at the time of Judgment, and any other contributions determined as due by audit, timecards, or otherwise, including estimated contributions for any months Defendants fail to report to Plaintiffs, plus liquidated damages and interest thereon, and attorneys' fees and costs. (*Id.* at ¶ 7; ECF No. 1).

As of the date of the filing of this motion, Defendants have failed to contact Ms. Stafford's office, submit the missing contribution reports, or submit payment of the amounts owed to the Plaintiffs. (*Id.* at ¶ 9). Accordingly, Plaintiffs are required to file this Motion for Default Judgment against Defendants. (*Id.*)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No.: 8:24-cv-01894-DFM

Defendants are well aware of the action against them. (*Id.* at ¶ 10). Defendants received two demand letters from Plaintiffs' Local Counsel (see Declaration of *P. Bruner* filed herewith and Exhibit A thereto), the last of which advised that failure to respond would result in litigation. Defendants were duly served with the Summonses and Complaint (ECF Nos. 1; 6-7; 13), the Court's Order re Plaintiffs' Request for Extension of Time to Serve; and Request to Serve Complaint by Alternate/Substituted Service of Process (ECF No. 12-13), Plaintiffs' Request for Entry of Default (ECF No. 14), and the Clerk's Notice of Entry of Default (ECF No. 15; 18) and did not request that the Defaults be set aside or otherwise appear or try to resolve this matter. (*Id.* at ¶ 10)[2].

## IV.    LEGAL ARGUMENT

### A.    The Court Has Jurisdiction Over the Subject Matter and Parties

When considering whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." [*In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).] Here, this Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132, which provides that plan fiduciaries can bring civil actions to enforce the terms of the plan. Further, jurisdiction exists in this Court over all claims by virtue of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* ("LMRA"), specifically 29 U.S.C. § 185, as Plaintiffs seek to enforce the terms and conditions of a collective bargaining agreement. (ECF No. 1, at ¶¶ 8-10). Personal jurisdiction exists over Defendants as they are employers by virtue of 29 U.S.C. § 1002(5), and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* ("NLRA"), specifically 29 U.S.C. § 152(2) (*Id.*), and Defendants have been properly served (*Stafford Decl.* at ¶ 10).

### B.    The Court is Authorized to Enter Default Judgment

#### 1.    Legal Standard for Default Judgment

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a Defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. [*Draper v. Coombes,* 792 F.2d 915, 924 (9th Cir. 1986), citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's

---

[2] It should be noted that Defendants have multiple ERISA related default judgments against them in a variety of jurisdictions.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No.: 8:24-cv-01894-DFM

1   decision whether to enter a default judgment is a discretionary one.").]

2       The Ninth Circuit has enumerated several factors which the court may consider in exercising its

3   discretion as to whether an entry of default judgment is proper (the "*Eitel* Factors"), which are: (1) the

4   possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the

5   sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning

6   material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying

7   the Federal Rules of Civil Procedure favoring decisions on the merits. [*Eitel v. McCool,* 782 F.2d 1470,

8   1471-72 (9th Cir. 1986).]

9       In applying this discretionary standard, the factual allegations contained in Plaintiffs' complaint

10  will be taken as true, except for those relating to the amount of damages. [*TeleVideo Systems, Inc. v.*

11  *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. l987).] Where a default judgment is granted, the scope of

12  relief is limited only by Federal Rule of Civil Procedure 54(c), which mandates that a "default judgment

13  must not differ in kind from, or exceed in amount, what is demanded in the pleadings." [*PepsiCo, Inc.*

14  *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).]

15      "If, after entry of default, the plaintiff's complaint does not specify a 'sum certain' amount of

16  damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2)." [*Int'l*

17  *Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.,* 919 F. Supp. 2d 680,

18  684 (D. Md. 2013)]. Critically, after default has been entered, all well-pleaded factual allegations are

19  admitted, except those pertaining to damages. [*S.E.C. v. Lawhaugh*, 359 F. Supp. 2d 418, 422 (D. Md.

20  2005); *Magruder Holdings, Inc.*, 2017 WL 3129192, at *3 ("Upon default, the well-pled allegations in

21  a complaint as to liability are taken as true, although the allegations as to damages are not.")]. "While

22  the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on

23  'detailed affidavits or documentary evidence to determine the appropriate sum.'" [*Magruder Holdings,*

24  *Inc.*, 2017 WL 3129192, at *3]. Notably, in the complete "absence of any request to set aside the default

25  or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default

26  judgment has been satisfied." [*Int'l Painters & Allied Trades Indus. Pension Fund, v. Auxier Drywall,*

27  *LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)]. Accordingly, the Fund now requests, pursuant to Fed. R.

28  Civ. P. 55(b)(2), that the Court enter a default judgment and award damages to Plaintiff's against all

named Defendants in the amounts outlined below and in its Motion for Default Judgment.

## 2. The Eitel Factors Weigh in Favor of Entering Default Judgment Against Defendant.

A careful consideration of the *Eitel* Factors as a whole demonstrates that entry of default judgment against Defendants in this matter is appropriate.

### (a) Plaintiffs Will Suffer Prejudice if Default Judgment is Not Granted

Under the first *Eitel* factor, the Court must examine whether Plaintiffs will suffer prejudice if default judgment is not granted. [*Eitel*, 782 F.2d at 1471-72.] As discussed below, Plaintiffs' claims against Defendant for violating ERISA § 515, 29 U.S.C. § 1145, and the terms of the Bargaining and Trust Agreements, are sound and well plead. If the Court were to deny Plaintiffs' Motion for Default Judgment, Plaintiffs would have no other avenue for recovery. [*PepsiCo*, 238 F. Supp. 2d at 1177.] Further delay for Plaintiffs in securing a judgment only serves to increase the chances that Plaintiffs will not be able to recover the amounts due by Defendants. Therefore, the first *Eitel* factor weighs in favor of granting default judgment against Defendants.

### (b) The Likelihood of Plaintiffs' Success on the Merits of their Claim is Certain.

The second *Eitel* factor addresses the sufficiency of Plaintiffs' complaint and the probability of success on the merits of its underlying claim. [*Walters v. Statewide Concrete Barrier, Inc.*, 2006 WL 2527776, at *4 (N.D. Cal. 2006) ("A party seeking default judgment must state a valid claim upon which it may recover.").] ERISA § 515 provides that every employer who is obligated to make contributions under a collective bargaining agreement shall make them in accordance with the terms of such agreement. When a benefit plan wins a judgment in an action to enforce Section 1145 (ERISA § 515), Section 1132 of the same title provides that the plan is entitled to the unpaid contributions, interest thereon, reasonable attorneys' fees and costs, and liquidated damages. [29 U.S.C. § 1132(g)(2).] The liquidated damages provision, as set forth in Section 1132(g)(2)(C)(ii), applies when: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. [*Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989).] Liquidated damages are mandatory where

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

factors (1)-(3) above are satisfied. [*Id.* at 215.]

Here, Plaintiffs' Complaint states clear claims for relief. Defendants are employers by virtue of ERISA and the NLRA, and were signatory to the Bargaining Agreement. Therefore, Defendants had a statutory duty to submit monthly contribution reports and make timely contribution payments to Plaintiffs under ERISA § 515, 29 U.S.C. § 1145.

Further, by virtue of Defendants' assent to the Collective Bargaining Agreement, which incorporates the terms of the Trust Agreements, Defendants have an express contractual obligation to timely make benefit contributions to Plaintiffs for hours worked by their employees. Defendants have failed to report and pay contributions due for work performed by Defendants' employees during the period from September 1, 2023 through December 4, 2023. (*Jeu Decl.* at ¶¶ 7-15; *Graham Decl.* at ¶¶ 11-12.) These contributions have been estimated pursuant to the Trust Funds' Delinquency Procedures. (*Bruner Decl.* at ¶¶ 8-9; Exh. B.) In addition, liquidated damages and interest have incurred and are owed to Plaintiffs for the estimated contributions for these months. (*Id.*)

Liquidated damages are mandatory in this case upon a judgment in favor of Plaintiffs, since the other *Idaho Plumbers* factors are satisfied: unpaid contributions due by Defendants existed at the time the Complaint was filed and the Collective Bargaining Agreement, Trust Agreements, and Delinquency Procedures specifically provide for liquidated damages. Thus, 29 U.S.C. § 1132(g)(2), including its liquidated damages provision, is applicable in this matter, which makes the likelihood of Plaintiffs' success on the merits certain. In addition, all allegations in the Complaint have been properly pled. Plaintiffs have submitted declarations from their Counsel, Union Business Managers and Welfare Fund Trustees Jeu and Graham in support of the factual allegations contained in the Complaint and this Motion for Default Judgment. Therefore, the second *Eitel* factor also weighs in favor of granting Plaintiffs' Motion for Default Judgment.

**(c)    The Sum of Money at Stake is Reasonable, Well Documented, and Justified.**

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendant's conduct. [*Eitel*, 782 F.2d at 1471.] If the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. [*Bd. of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997).] A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. [*Truong Giang Corp. v. Twinstar Tea Corp*., No. C 06-3594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).] In determining if the amount at stake is reasonable, the Court may consider Plaintiffs' declarations, calculations, pay stubs, and other documentation of damages. [*Id*.]

### i. Unpaid Contributions, Liquidated Damages, and Interest

The amount of required contributions, as well as rates for liquidated damages and interest on delinquent contributions, are set forth in the Bargaining and Trust Agreements to which Defendant is bound. (*Graham Decl*. at ¶¶ 7-9; 15; Exh. B1-C.) The amounts claimed herein as due were determined as a result of a review of Defendant's dispatch records, work histories and paycheck stubs, which revealed the number of hours worked by Defendant's employees during the time period from September 1, 2023 through December 4, 2023 that were not reported to Plaintiffs. (*Jeu Decl*. at ¶¶ 7-27; Attachments A-B; *Graham Decl*. at ¶¶ 14-16.) The total amount due also includes liquidated damages and interest on Defendant's unpaid contributions in accordance with the Bargaining and Trust Agreements. (*Graham Decl*. at ¶¶ 15-16; *See also Jeu Decl*. at ¶¶ 21-27.)

Additionally, pursuant to the Policy on Contribution and Delinquency Collections and Audits of the Arkansas Pipe Trades Health and Welfare Fund ("Delinquency Procedures"), unreported contributions are estimated in the event that a signatory employer fails to submit its contribution reports (*Bruner Decl*. at ¶ 8; Exh. B.) Defendant's unreported contributions and working assessments were estimated based on hours worked based on dispatch records, work histories and paycheck stubs (*Graham Decl*. at ¶¶ 14; 16; *See also Jeu Decl*. at ¶¶ 7-27.) Liquidated damages and interest were calculated on these contributions pursuant to the terms of the Bargaining and Trust Agreements as well as the Delinquency Procedures.

The amount Defendants owe to Plaintiffs has been established in the supporting declarations filed herewith, is well documented, and due pursuant to ERISA § 515, and the Bargaining and Trust Agreements; therefore, the amount claimed herein as due is reasonable.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

ii. **Attorneys' Fees and Costs of Suit**

Section 1132(g) of ERISA requires the Court to award Plaintiffs "reasonable attorneys' fees and costs of the action" when Plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. [29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc*., 104 F.3d 253, 258 (9th Cir. 1996).] Similarly, the Collective Bargaining Agreement, Trust Agreements and Delinquency Procedures provide that Defendants must pay all reasonable attorneys' fees and costs incurred in relation to the collection of delinquent contributions (*Graham Decl.*, Exh. B, Appendix entitled Revised Standard Form of Participation Agreement, Section 5 (as to Pension Fund); *Bruner Decl.* at ¶ 9; Exh. B, Article III, Section (c), para. 4)).

Here, Plaintiffs seek reimbursement for attorneys' fees incurred in the **total** amount of **$29,563.75**, which consists of hours worked by Plaintiffs' Counsel Paula Bruner from January 4, 2024 through February 19, 2025 and hours worked by Plaintiffs' Counsel Michele Stafford from July 3, 2024 through March 14, 2025, in seeking to recoup Defendants' debt to Plaintiffs as required by the Collective Bargaining Agreement, Trust Agreements, and Delinquency Procedures. (*Bruner Decl*. at ¶¶ 12-13, *Stafford Decl*. at ¶¶ 18-26.) Plaintiffs also seek reimbursement of costs in the amount of **$2,445.33**. (*Id.*)

Despite knowing that they did not meet their obligations under the terms of the Collective Bargaining Agreement, Trust Agreements, and Delinquency Procedures, Defendants continue to fail to report and pay, regardless of Plaintiffs' requests for Defendants' reports and payment of amounts found due. (*Bruner Decl*. at ¶¶ 3-6; *Stafford Dec*. at ¶¶ 9-10.) Accordingly, Plaintiffs are required to file this Motion for Default Judgment against Defendants. (*Stafford Decl*. at ¶ 9.) The amount owed to Plaintiffs by Defendants is well documented and, as described herein, is reasonable and should be awarded to Plaintiffs.

(d) **No Dispute Concerning Material Facts Has Arisen**

The fourth *Eitel* factor considers the possibility of dispute as to any material facts of the case. As Defendant did not file an answer in response to Plaintiffs' Complaint, and the Court has entered Defendant's default, the Court must take all well pleaded facts, except those pertaining to damages, as true. [*TeleVideo Systems*, 826 F.2d at 917-18.]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No.: 8:24-cv-01894-DFM

As stated above, Defendants are well aware of their debt to Plaintiffs. Defendants communicated with Business Manager and Fund Trustee Ricky Jeu on multiple occasions regarding their delinquency, received multiple demand letters from Plaintiffs' Local Counsel, and were duly served with numerous documents in this Action, including the Summonses and Complaint, and Notice of Entry of Defaults. The evidence submitted by Plaintiffs in support of this Motion supports Plaintiffs' account of the events. The record, therefore, reflects that little possibility of dispute exists as to Defendant's liability for damages.

### (e)    Defendant's Default was Not Due to Excusable Neglect

The fifth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise them of the pendency of the action brought against them. [*Phillip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).] In addition, the Court also considers whether the circumstances surrounding Defendants' failure to answer the complaint are sufficient to excuse or justify its default. [*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (Default cannot be attributed to excusable neglect where Defendant was properly served with the complaint, the notice of entry of default, and the papers in support thereof).]

Here, there is no possibility of excusable neglect. Defendants were well aware of this action against them. (*Stafford Decl*. at ¶ 10.)   Defendants were duly served[3] with the Summonses and Complaint (ECF Nos. 1; 6-7; 13), the Court's Order re Plaintiffs' Request for Extension of Time to Serve; and Request to Serve Complaint by Alternate/Substituted Service of Process (ECF No. 12-13), Plaintiffs' Request for Entry of Default (ECF No. 14), and the Clerk's Notice of Entry of Default (ECF No. 15; 18) and did not request that the Defaults be set aside or otherwise appear or try to resolve this matter. (*Id.*) Thus, the instant Motion was filed without any indication of excusable neglect of Defendant.

---

[3] In fact, Defendants were served via personal (drop off) service, regular U.S. mail, via the Secretary of State, by email and via LinkedIn notification.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

**(f)**     **A Decision on the Merits is Impossible**

Under the final *Eitel* factor, the Court must consider the strong policy of the Federal Courts in favoring decisions on the merits. This policy, however, is not dispositive; rather, the Court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. [*PepsiCo*, 238 F. Supp. 2d at 1172, 1177.]  Moreover, a "Defendant's failure to answer the plaintiffs' complaint makes a decision on the merits impractical, if not impossible." (*Id.*)  Therefore, when a Defendant fails to defend an action, the policy of favoring decisions on the merits does not preclude a court from granting a default judgment. [*Walters,* 2006 WL 2527776, at *6; *PepsiCo*, 238 F. Supp. 2d at 1177.]

Here, Defendants failed to participate in the proceedings brought against them, despite adequate notice and opportunity to do so. (*Id.*) Just like in *PepsiCo*, Defendants' failure to appear has made a decision on the merits impractical, if not impossible. Plaintiffs should not be penalized for Defendants' decision to ignore their responsibilities to the Court and not appear or otherwise defend themselves in this Action. Thus, despite the strong policy of the federal courts in favoring decisions on the merits, default judgment is appropriate in this case.

**C.**     **Interest, Liquidated Damages, and Attorneys' Fees and Costs Must Be Awarded To Plaintiffs**

**1.     Liquidated Damages and Interest Must be Awarded to Plaintiffs**

ERISA § 515 provides that every employer who is obligated to make contributions to a multiemployer plan pursuant to the terms of a collective bargaining agreement must make such contributions in accordance with the terms of such agreement. Where judgment is entered in favor of the plan in an action to enforce Section 515, the court must award the plan interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and costs, and such other legal or equitable relief as the court deems appropriate. [ERISA § 502(g), 29 U.S.C. 1132(g)(2), *See also, Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (An award of liquidated damages under §1132(g)(2) is "mandatory and not discretionary."]  To award statutory liquidated damages, the Ninth Circuit requires that unpaid contributions exist at the time the lawsuit was filed. [*Idaho Plumbers*, 875 F.2d at 212.]

In *Local 81 v. Wedge Roofing*, 15 E.B.C. 2470 (N.D. Cal. 1991), this Court specified that liquidated damages shall also be awarded where further unpaid contributions become delinquent after the filing of the lawsuit. At the time that Plaintiffs filed this action, Defendant had failed to submit its contribution reports or payments for the months of September through December 2023. (*Stafford Decl.* ¶ 7.) Liquidated damages and interest for these months are now due. (*Id*.)

Plaintiffs' action in this matter is based on the statutory duty provided by ERISA § 515 for payment of contributions pursuant to the terms of a valid Bargaining Agreement, to which Defendant was signatory, and the incorporated Trust Agreements. Defendant's failure to comply with the terms of the Bargaining and Trust Agreements was the cause of this litigation, at great expense to Plaintiffs in administration, attorneys' fees, and costs.

Pursuant to the terms of the Bargaining and Trust Agreements, and ERISA § 502(g), 29 U.S.C. 1132(g)(2), Defendant is liable for between ten percent (10%) and twenty percent (20%) liquidated damages (depending on the fund) and between ten percent (10%) and twelve percent (12%) interest (depending on the fund) per annum on its unpaid contributions from the date that they were delinquent until paid as well as attorneys' fees and costs. (*Jeu Decl*. at ¶¶ 21-27; *Graham Decl*. at ¶¶ 15; *Bruner Decl*. at ¶¶ 8-9; 12-13; *Stafford Decl*. at ¶¶ 18-23.) The amount of required contributions, as well as rates for liquidated damages and interest on delinquent contributions, are set forth in the Bargaining Agreement, Trust Agreements and Delinquency Procedures, to which Defendants are bound. The amounts Defendants owe to Plaintiffs have been established in the declarations of Plaintiffs' Counsel(s), and Business Managers. (*See generally, Jeu Decl., Graham Decl., Stafford Decl.*, and *Bruner Decl*.) Thus, there can be no question these are reasonable amounts.

### 2. Attorneys' Fees and Costs of Suit Must Be Awarded to Plaintiffs

Section 1132(g) of ERISA requires the Court to award Plaintiffs "reasonable attorneys' fees and costs of the action" when Plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. [29 U.S.C. § 1132(g)(2)(D); *Nw. Adm'rs, Inc.*, 104 F.3d at 253, 258.] "Congress enacted § 1132(g)(2)(D) to encourage enforcement of employer contributions and protect employee funds from the high cost of litigation and collection expenses." [*Sheet Metal Workers Health & Welfare Tr. Fund v. Big D Serv. Co.*, 876 F.2d 852, 854 (10th Cir. 1989) (citation omitted)]. An award of reasonable fees

and costs under this section is mandatory.  [*See, e.g., Slotky*, 956 F.2d at 1377; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Pro. Painting Inc.*, 2011 WL 3744123, at *6 (D. Md. Aug. 23, 2011); *Trustees of Glaziers Loc. 963 Pension, Welfare, & Apprentice Funds v. Walker & Laberge Co.*, 619 F. Supp. 1402, 1405 (D. Md. 1985)].

Similarly, the Bargaining and Trust Agreements as well as the Delinquency Procedures provide that Defendants must reimburse Plaintiffs for attorneys' fees and costs incurred in connection with the collection of delinquent contributions.

Here, Plaintiffs seek reimbursement for attorneys' fees incurred in the ***total*** amount of **$29,563.75**, which consists of hours worked by Plaintiffs' Counsel Paula Bruner from January 4, 2024 through February 19, 2025 and hours worked by Plaintiffs' Counsel Michele Stafford from July 3, 2024 through March 14, 2025, in seeking to recoup Defendants' debt to Plaintiffs as required by the Collective Bargaining Agreement,  Trust Agreements, and Delinquency Procedures. (*Bruner Decl*. at ¶¶ 12-13, *Stafford Decl*. at ¶¶ 18-26.) Plaintiffs also seek reimbursement of costs in the amount of **$2,445.33**. (*Id*.)

Plaintiffs' Counsel has submitted declarations summarizing the background and experience of the attorneys and paralegals who performed work on this matter, and time spent by attorneys and paralegals in this matter, along with their hourly rates, and has included copies of the invoices prepared and sent to Plaintiffs herein. These attorneys' fees have been paid by Plaintiffs and are now owed by Defendants. (*Bruner Decl*. at ¶¶ 13-14; *Stafford Decl*. at ¶ 23.) Plaintiffs submit that all amounts incurred in pursuing Defendants' debt to Plaintiffs' Trust Funds are reasonable and should be awarded to Plaintiffs upon default judgment.

In the Ninth Circuit, the reasonableness of attorneys' fees is first determined by calculating the lodestar amount. [*Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994) ("When awarding fees under ERISA, 'the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (finding strong presumption that the lodestar figure represents a reasonable fee).] "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."

16

[*Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996).] Further, although "[n]othing in the text of 29 U.S.C. § 1132(g)(2)(D) suggests that to be 'reasonable,' fees must be proportional," [*Metro Auto Center*, 501 F.3d at 294], Plaintiffs' requested fees are reasonable. "ERISA clearly assumes that [pension plan] trustees will act to ensure that a plan receives all funds to which it is entitled." [*Central States Pension Fund. v. Central Transp.*, Inc., 472 U.S. 559, 571 (1985)]. The court may, however, adjust the award from the lodestar figure upon consideration of additional factors. [*Kerr v. Screen Extras Guild*, 526 F.2d 70 (9th Cir. 1975); *Credit Managers Ass'n of So. Calif.,* 25 F.3d at 750 ("[T]he court may increase or decrease the lodestar fee based on factors identified by this circuit in *Kerr*, 526 F.2d at 67 that are not subsumed within the initial calculation of the lodestar.").]

The twelve guideline factors set forth in *Kerr* (the "*Kerr* factors") require consideration of: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The amount of attorneys' fees is within the discretion of the trial Court. [*Kerr*, 526 F.2d at 69; see also *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001); *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).] The trial court's "superior understanding of the litigation" puts it in the best position to determine the reasonableness of the fees. [*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1047, 1045 (9th Cir. 2000), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).]

**(a)    Reasonableness of Hourly Billing Rate**

The billing rates charged to the Trust Funds by Plaintiffs' Counsel in this action are as follows: paralegals at $180.00 per hour and attorneys at $225-275 per hour, which are <u>significantly lower</u> than those charged by similar firms practicing in the area. Moreover, "[t]he starting point for calculating attorneys' fees is 'the prevailing market rate in the relevant community.'" [*Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003).] In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of Counsel;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
Case No.: 8:24-cv-01894-DFM

1    (3) the quality of representation; and (4) the results obtained. [*See Cabrales v. County of Los Angeles*,

2    864 F.2d 1454, 1464 (9th Cir. 1988).]

3       In the Ninth Circuit, evidence of billing rates awarded in ERISA cases in the region must be

4    considered. [*Welch v. Metro Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007).] The Ninth Circuit has

5    "repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates

6    actually charged to the prevailing party." [*Id*. citing *Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d

7    464, 471 (9th Cir. 2000) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.

8    1986)).] "Rather, billing rates 'should be established by reference to the fees that private attorneys of

9    an ability and reputation comparable to that of prevailing Counsel charge their paying clients for legal

10    work of similar complexity.'" [*Id*. quoting *Davis v. City and County of San Francisco*, 976 F.2d 1536,

11    1545 (9th Cir. 1992).]

12       In *May v. MetLife*, 2005 U.S. Dist. LEXIS 17783 *9, 10 (N.D. Cal. 2005), an ERISA long-term

13    disability case, the court awarded fees based on declarations that the market rate for "partner-level

14    ERISA attorneys in the Bay Area" is "between $425.00 and $450.00 per hour, junior partners charge

15    $375.00 per hour, and associates' time is billed at $225.00 per hour." In *Day v. SBC Disability Income*

16    *Plan*, 2008 WL 2783482 *2 (N.D. Cal. 2008), also an ERISA long-term disability case, the court found

17    that $450.00 per hour was reasonable. In *King v. CIGNA Corp.*, 2007 U.S. Dist. LEXIS 94644 *8-*11

18    (N.D. Cal. 2007), an ERISA long-term disability case, this Court determined that rates of between

19    $400.00 and $450.00 per hour were reasonable rates. In *Hyder v. Kemper Nat'l Services, Inc.*, 2007

20    U.S. Dist. LEXIS 45843 *14 (N.D. Cal. 2007), another ERISA long-term disability case, this Court

21    determined that a rate of $425.00 per hour was a reasonable rate. In *Board of Trustees of the Boilermaker*

22    *Vacation Trust v. Skelly, Inc.,* 389 F. Supp. 2d 1222, 1227-1228 (N.D. Cal. 2005), an action by an

23    ERISA trust to collect delinquent contributions, the court found that in 2004 an associate rate of $225.00

24    per hour and partner rate of $345.00 per hour were reasonable and further noted that these rates reflected

25    a "discount from the firm's standard billing rates." Finally, in *Trustees on Behalf of Teamsters Benefit*

26    *Trust v. Casey's Office Moving Services,* 2007 WL 1031320 (N. D. Cal. 2007), a relatively simple trust

27    collection action under ERISA, in the context of a motion for judgment by default, the court accepted

28    as reasonable an hourly rate of $250.00 per hour for each of two attorneys for the plaintiff Trust.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

Accordingly, billing rates ranging from $225.00 per hour to $450.00 per hour awarded in the ERISA actions cited herein are reasonable because these rates are the rates awarded to private attorneys of similar ability and reputation comparable to that which prevailing Counsel charge their paying clients for legal work of similar complexity.

In regard to the paralegal hours included herein, other courts within this District have approved hourly rates for paralegals that are in line with the rates sought here. [*See Echague v. Metro. Life Ins. Co.,* 69 F. Supp. 3d 990, 996 (N.D Cal. 2014) (approving $150/hour for paralegal in ERISA case); *Oster v Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1034 (N.D. Cal. 2011) (same).]

### (b)    Reasonableness of Hours Billed

Plaintiffs' Counsel billed a total of 150.25 hours from January 1, 2024 through February 19, 2025 and March 14, 2025 respectively, incurring $29,563.75  in fees and $2,446.33 in costs, all totaling **$32,010.08** as follows:

| Robein, Urann, Spencer, Picard & Cangemi APLC | |
|---|---|
| Attorneys' Fees (1/4/24 through 2/19/25): | $14,349.25 |
| **Tucker Arensberg LLP** | |
| Attorneys' Fees (7/3/24 through 3/14/25): | $15,214.50 |
| Costs (7/3/24 through 3/14/25): | $2,446.33 |
| **Total Attorneys' Fees and Costs:** | **$32,010.08** |

(*Bruner Decl*. at ¶¶ 12-13; *Stafford Decl*. at ¶¶ 18-22.) The attorneys' fees specified above were incurred by Plaintiffs for work performed by Plaintiffs' Counsel for activities including but not limited to: Corresponding with clients; preparing demand letters; preparation and service of: Complaint, Plaintiffs' Request for Entry of Default; case management, including reviewing and updating calendar to reflect Court deadlines; and preparation of this Motion for Default Judgment, including the supporting declarations and proposed judgment. (*Id*.) Accordingly, all hours reported were reasonably expended.

### (c)    Reasonableness of Total Attorneys' Fees Requested

As set forth above, in the Ninth Circuit the reasonableness of attorneys' fees is first determined by calculating the lodestar amount. [*Credit Managers,* 25 F3d at 743, 750 ("When awarding fees under ERISA, 'the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"), quoting *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990).]  The lodestar amount is equal to the number of hours

Plaintiffs' Counsel reasonably expended on the litigation multiplied by a reasonable hourly rate. [*Morales*, 96 F.3d at 363.]  The reasonable hourly rate is based on the prevailing market rate in the relevant community in ERISA actions.

Therefore, at the rates requested, the Court should award Plaintiffs attorneys' fees in the ***total*** amount of **$29,563.75** in fees (*Bruner Decl*. at ¶¶ 12-13; *Stafford Decl*. at ¶¶ 18-22.)  In addition, the Court should award Plaintiffs costs in the amount of **$2,446.33**, reasonably incurred by Plaintiffs' Counsel. This amount is comprised of the Complaint filing fee, process server fees for service of the Summons and Complaint on Defendant. (*Stafford Decl*. at ¶ 21.)

It is further requested that Plaintiffs be awarded any additional attorneys' fees and costs they incur relating to this Action, and that Plaintiffs may submit additional declarations to the Court relative to such additional amounts claimed due.

**D.**    Defendant Corey Stiles is Personally and Individually Liable for the Amounts Due Herein

Initially, after default has been entered, all well-pleaded factual allegations are admitted, except those pertaining to damages. [*S.E.C. v. Lawhaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005); *Magruder Holdings, Inc.*, 2017 WL 3129192, at *3 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.")]**.** "While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum**.**'" [*Magruder Holdings, Inc.*, 2017 WL 3129192, at *3]. Notably, in the complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." [*Int'l Painters & Allied Trades Indus. Pension Fund, v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)].

Defendants have failed to appear in this action. The Complaint alleges both fiduciary liability and alter ego liability against Corey Stiles individually. Pursuant to *Magruder Holdings, Inc* above, Corey Stiles should be deemed individually liable for all amounts due herein.

The Complaint alleges that as principal, sole owner and manager of Defendant Stiles Consulting, Defendant Stiles holds or exercises discretion and control over significant funds, which are due and

20

owing to the Plaintiffs Funds as contributions, and which under the terms of the Funds' Plan documents and law, constitute Fund assets. (*Stafford Decl*. at ¶ 8; ECF. No. 1 at ¶¶ 32-33) As such, he is a fiduciary of the Plaintiff Funds, and therefore, he is liable individually for the amounts due. Further, Defendant Stiles is himself individually liable as an alter ego of the business sued herein for retaining the contributions and working assessments for his personal gain. (*Id.*)

### 1.    Corey Stiles is the Alter Ego of Stiles Consulting LLC

The Complaint filed by Plaintiffs herein alleges that Corey Stiles individually uses Stiles Consulting LLC's money for his own personal use (ECF No. 1 at ¶34; see also *Jeu Decl.* at ¶17). The general contractor on Stiles Consulting's job confirmed that they issued payment to Corey Stiles, and that Mr. Stiles used to pay for his personal expenses rather than pay the fringe benefit contributions due on the project (*Jeu Decl.* at ¶17). The Complaint further alleges that Corey Stiles refused to authorize its third party payroll company to pay any outstanding bills for Stiles Consulting (ECF No. 1 at ¶35), thus Mr. Stiles personally made the decision to retain plan assets rather than pay them to the Plaintiff funds as required. (See *Bruner Decl*. at ¶6)

Under California law, Plaintiffs must meet two basic requirements to establish alter ego. Plaintiffs must show that there is a unity of interest and ownership that the separate personalities of the two entities no longer exist and that the failure to disregard their separate identities would result in fraud or injustice (*Halo Elecs. v. Bel Fuse, Inc.*, No. 2021-1861 (Fed. Cir. May. 6, 2022)

The Court in *Laguna v. Coverall N. Am., Inc.*, Civil No. 09-cv-2131-JM (BGS) (S.D. Cal. Jul. 26, 2011) denied a motion to dismiss an alter ego claim noting that Plaintiff had alleged specific facts to allege alter ego, including that one of the defendants is the sole shareholder, regularly removed cash and other assets from the corporate entity (Coverall) and failed to keep corporate minutes.

"As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted. When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation." (*Mesler v. Bragg Management* (1985) 39 Cal. 3d 290) See also *Horticultural Enterprises Corp. v. Allstate Inc*. Co. 477 F. Supp 161 (9th Circuit 1979) (intermingling of corporate and personal funds

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

grounds to disregard corporate entity) and American Home Ins. Co v. Travelers Indem. Co 122 Cal.App.3d 951 (fraud or inequity remedied by allowing alter ego claims)

Stiles Consulting LLC is located at Mr. Stiles' personal residence pursuant to the records of both the Secretary of State and the Contractor's State Licensing Board. There is no evidence that there was ever an officer other than Mr. Stiles personally. (*Stafford Decl*., Exh. A-B) or that there were ever any other individuals with authority to bind Stiles Consulting LLC. Mr. Stiles made all of the decisions for Stiles Consulting LLC, including the decision to use payments received for his personal expenses and to withhold payment of plan assets to the Plaintiff Funds.

It is well settled that California courts can pierce the corporate veil when both of the following two requirements are met:

- Unity of Interests – The shareholders in question (here, individual Corey Stiles) have treated the corporation as their "alter ego," rather than as a separate entity; and

- Inequitable Result – Upholding the corporate entity and allowing for the shareholders to dodge personal liability for its debts would "sanction a fraud or promote an injustice." *Automotriz etc. de California v. Resnick* (1957) 47 Cal. 2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]

In California, courts apply a factor-by-factor test to determine whether "alter-ego" liability is appropriate. These factors are laid out in the case of *Associated Vendors Inc. v. Oakland Meat Packing, Co. (1962)* 210 Cal.App.2d 825, 26 Cal.Rptr. 806 and include: (1) Did the individuals divert assets from a corporation by or to a stockholder or other person or entity to the detriment of creditors? (2) Domination of the corporation by a few key individuals? (3) Did the individuals and corporation use the same office or business location? (4) Did the individuals fail to adequately capitalize the corporation? (5) Will there be an inequitable result if the court fails to pierce?

In practice, the alter-ego doctrine is usually applied "where there are only a few shareholders and they have not respected their corporation's separate identity." *Associated Vendors Inc. v. Oakland Meat Packing, Co. (1962); Automotiz del Golfo de California v. Resnick.*

Here, Corey Stiles took the funds that were owed to Stiles Consulting and ran. He used those funds for his own personal use. Corey Stiles is the sole officer, sole shareholder and sole principal of

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

Stiles Consulting LLC, a limited liability corporation that is located in his personal residence. He most certainly acted in bad faith by diverting corporate assets to the detriment of Plaintiffs herein and multiple other multiemployer plans[4] as well as their participants. The corporation is under capitalized in that it cannot pay its bills. Should the Court fail to pierce the corporate veil, Plaintiffs and their participants will be unable to recover the benefits owed to them.

### 2.    Corey Stiles is a Fiduciary

In Plaintiffs' Complaint, it sets forth an ERISA breach of fiduciary duty claim, averring that Corey Stiles is a fiduciary as defined by ERISA and, therefore, liable to Plaintiffs for all unpaid contributions owed by Stiles Consulting to the Fund.  Under ERISA, a corporate owner and officer that exercises any authority or control over the disposition of plan assets (*i.e.*, fringe benefit contributions) is a fiduciary and, therefore, is liable for all delinquent contributions owed by the corporation to a benefit plan.  [*Laborers' Combined Funds of Western Pa. v. Cioppa*, 346 F. Supp. 2d 765; 2004 U.S. Dist. LEXIS 26955 (W.D. Pa. 2004); *Laborers' Combined Funds of Western Pa. v. Parkins*, 2002 U.S. Dist. LEXIS 20035; 28 Employee Benefits Cas. (BNA) 2391 (W.D. Pa. 2002); *PMTA-ILA Containerization Fund v. Rose*, 1995 U.S. Dist. LEXIS 10877 (E.D. Pa. 1995); 2002 U.S. Dist. LEXIS 20035; *Connors v. Paybra Mining Co.*, 807 F. Supp. 1242 (S.D. W. Va. 1992); *Galgay v. Gangloff*, 677 F. Supp. 295 (M.D. Pa. 1987), aff'd, 932 F.2d 959 (3d Cir. 1991)].    Section 3(21)(A) of ERISA defines the term "fiduciary" as follows:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets . . . .*
> 29 U.S.C. § 1002(21)(A) (emphasis added).[5]

Pursuant to ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."  [29 U.S.C. § 1104(a)(1)(A)(1)].  ERISA also provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [by ERISA] <u>shall be personally liable</u> to make good to such plan any losses

---

[4] A search of PACER reveals multiple other default judgments against the corporate entity.

[5] See also *Blatt v. Marshall*, 812 F.2d 810 (2d Cir. 1987) ("As defined by the amendments, a fiduciary is a person who exercises any power or control, management or disposition with respect to monies or other property of an employee benefit plan.").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

to the plan resulting from each such breach . . ."  [29 U.S.C. § 1104(a) (underline added)].

Corey Stiles is personally liable under ERISA for breach of his fiduciary duty because he exercised authority and control over the management and disposition of delinquent fringe benefit contributions that became plan assets once the hours were worked. Corey Stiles failed to pay those amounts to the Plaintiff Funds as required.  [Complaint, ¶ 32].  Accordingly, because Corey Stiles had authority and control over the disposition of plan assets, he is a fiduciary under ERISA.  [Complaint, ¶32-35; *Cioppa*, 346 F. Supp. at 770, *quoting Rose,* 1995 U.S. Dist. LEXIS 10877, 1995 WL 461269, at *3-4].

## IV.    <u>CONCLUSION</u>

Based on the above, Plaintiffs request that a judgment by default be entered in their favor and against Defendants ordering Defendant Stiles Consulting and Defendant Stiles to make payment of estimated contributions and working assessments for hours worked by their employees during the time period from September 2023 through December 2023, and related amounts due thereon, including liquidated damages and interest and attorneys' fees and costs incurred in this action. Plaintiffs request that an order be entered allowing that Plaintiffs may submit additional declarations to the Court relative to any and all additional amounts claimed due, if required.

Dated: March 25, 2025                    TUCKER ARENSBERG, LLP

                                         By:    */s/ Michele R. Stafford*
                                                Michele R. Stafford, Esquire
                                                Attorneys for Plaintiffs, Arkansas Pipe Trades
                                                Health and Welfare Fund, et al.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**
**Case No.: 8:24-cv-01894-DFM**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned declare:

     1.    I am a citizen of the United States and am employed in the County of Allegheny, State of Pennsylvania.  My business address is One PPG Place, Suite 1500, Pittsburgh, PA 15222.

     2.    I am over the age of eighteen and not a party in this action.

     3.    On **March 25, 2025**, I served the following document(s):

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the interested parties in said action by mailing a true and exact copy of said document in a sealed envelope and placing the envelope for collection and First-Class mailing following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

     4.    The envelope(s) were addressed and mailed as follows:

**Corey Stiles**
**Stiles Consulting, LLC**
**7 Conyers Lane**
**Ladera Ranch, CA 92694**

     5.    I emailed a true and exact copy of said document to Defendants at the following email addresses: coreystiles@stilesconsultingfirm.com; corey@stilesfoodservice.com; aracelyglz1@outlook.com; coreystiles@hotmail.com; lpotvin@gmail.com; coreystiles@yahoo.com

     I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 25, 2025, at Pittsburgh, Pennsylvania.

TUCKER ARENSBERG, P.C.

/S/ Ellen Rosen
_____
Ellen Rosen
Legal Assistant

1

CERTIFICATE OF SERVICE
Case No.: 8:24-cv-01894-DFM