O

# United States District Court
# Central District of California

| | |
|---|---|
| ARKANSAS PIPE TRADES HEALTH AND WELFARE FUND et al., <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>STILES CONSULTING FIRM, LLC et al., <br><br>　　　　　Defendants. | Case № 8:24-cv-01894-ODW (KESx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [21]** |

## I.　INTRODUCTION

Plaintiffs bring this action against Defendants for breach of a written collective bargaining agreement and violation of the Employee Retirement Income Security Act ("ERISA") § 515, 29 U.S.C. § 1145. (Compl. ¶¶ 27–42, ECF No. 1.) Plaintiffs seek to recover delinquent benefit contributions, interest, liquidated damages, and attorneys' fees and costs. (*Id.*, Prayer.) Defendants failed to appear and defend, and Plaintiffs now move for entry of default judgment. (Mot. Default J. ("Motion" or "Mot."), ECF No. 21.) For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

As defined under ERISA, Arkansas Pipe Trades Health and Welfare Fund ("Welfare Fund") is an employee benefit welfare plan, Oklahoma State Pipe Trades Annuity Fund ("Annuity Fund") and United Association National Pension Fund ("Pension Fund") are pension benefit plans, and Plumbers and Pipefitters International Training Fund ("Training Fund") is a welfare benefit fund (collectively, the "Trust Funds"). (Compl. ¶¶ 1–4.) The Trust Funds have the purposes of providing health and welfare benefits, retirement income, pension benefits, and training and education benefits to employees, respectively. (*Id.*) United Association of Plumbers and Pipefitters Local Union 155 ("Union") is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(5), and an employee organization within the meaning of ERISA. (*Id.* ¶ 5.)

Stiles Consulting Firm, LLC *dba* Stiles Foodservice and Stainless Installation ("Stiles Consulting") is an employer within the meaning of ERISA, engaged as a contractor or subcontractor in the plumbing and pipefitting industry. (*Id.* ¶ 6.) Corey Stiles is the sole managing member of Stiles Consulting. (*Id.* ¶ 7.)

The Union negotiated a Project Labor Agreement ("PLA") with Stiles Consulting for a specific project located in Arkansas ("Project"). (*Id.* ¶¶ 5, 14.) On February 17, 2023, Stiles entered into the PLA, thereby binding Stiles Consulting to the Construction Collective Bargaining Agreement ("CBA"). (*Id.* ¶¶ 11–12,[2] Exs. 1–2, ECF No. 1-1.) The PLA and CBA required Stiles Consulting to submit monthly reports and pay fringe benefit contributions to the Trust Funds for all Union employees. (*Id.* ¶¶ 12–13.) Stiles Consulting received and employed Union members for the Project. (*Id.* ¶ 14.) However, although Stiles Consulting initially complied with the obligations of the PLA and CBA, beginning in September 2023, it stopped filing the reports and paying the monthly contributions and assessments. (*Id.* ¶¶ 17–18.) On December 4, 2023, Stiles informed the Union that Stiles Consulting could not pay the contributions and

---

[2] The Complaint includes two paragraphs numbered eleven. The Court cites the second.

assessments it owed for the months of September through December 2023. (*Id.* ¶ 20.) Consequently, the Union terminated the PLA with Stiles Consulting in January 2024. (*Id.* ¶ 21.) The Trust Funds' subsequent attempts to recover the delinquent contributions and assessments were unsuccessful. (*Id.* ¶ 22.)

Accordingly, on August 30, 2024, the Trust Funds and Union ("Plaintiffs") brought this legal action against Stiles and Stiles Consulting ("Defendants") to recover delinquent contributions, accruing interest, liquidated damages, and working assessments owed (the "Obligations"), as well as attorneys' fees and costs incurred in collecting the Obligations. (*Id.* ¶¶ 21–26.) Plaintiffs assert two causes of action, the first against both Defendants for payment of the Obligations pursuant to the CBA and ERISA, and the second against Stiles only, for payment of the Obligations based on breach of fiduciary duty and alter ego liability. (*Id.* ¶¶ 27–42.)

On December 4 and 6, 2024, Plaintiffs served Defendants. (Proof Service, ECF No. 13.) However, Defendants did not appear or defend the case. Accordingly, upon Plaintiffs' request, on January 21, 2025, the Clerk of Court entered Defendants' default. (Default, ECF No. 15.) In response to the Court's orders, on March 25, 2025, Plaintiffs filed this motion for default judgment against Defendants. (Mot. 1.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc.*, *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true," except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make detailed findings of fact when entering default judgment, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV.  DISCUSSION

Plaintiffs satisfy the procedural requirements for default judgment, establish that entry of default judgment against Defendants is substantively appropriate, and demonstrate that the requested relief is warranted.

### A.  PROCEDURAL REQUIREMENTS

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Plaintiffs meet these requirements. On January 21, 2025, the Clerk entered default against Defendants as to Plaintiffs' Complaint. (*See* Default.) Counsel for Plaintiffs submits declaration testimony that Defendants are not minors or incompetent persons and that the Servicemembers Civil Relief Act does not apply. (Decl. Michele R. Stafford ISO Mot. ("Stafford Decl.") ¶ 11, ECF No. 25.) Finally, although service of the Motion is not required because Defendants have not appeared, Plaintiffs nonetheless served Defendants with the Motion. (Certificate Service, ECF No. 21-1.)

Thus, Plaintiffs satisfy the procedural requirements for entry of default judgment.

B.     *EITEL* FACTORS

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": "(1) the possibility of prejudice to the plaintiff"; "(2) the merits of plaintiff's substantive claim"; "(3) the sufficiency of the complaint"; "(4) the sum of money at stake"; (5) the possibility of a material factual dispute; "(6) whether the default was due to excusable neglect"; and (7) the strong policy favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important."  *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  Thus, the Court considers these factors first.

   *1.     Second & Third* Eitel *Factors*

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover."  *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Plaintiffs assert one cause of action for payment of the Obligations, based on Defendants' breach of the CBA, violation of ERISA § 515, and violation of the Labor Management Relations Act § 301(a).  (Compl. ¶¶ 27–30.)  They also assert a cause of action against Stiles for breach of fiduciary duty and alter ego liability.  (*Id.* ¶¶ 31–42.) The Court finds that Plaintiffs sufficiently state a claim under ERISA and declines to reach Plaintiffs' additional bases for recovery.

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 826 (9th Cir. 1984) (holding that employer's failure to contribute agreed-upon amount to pension fund was an ERISA violation).  If

the employer fails to make contributions as required, the plan or a plan fiduciary may bring an action to recover the unpaid contributions. *See* 29 U.S.C. § 1132(d)(1); *see, e.g.*, *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1227 (N.D. Cal. 2014).

Additionally, a non-signatory may be liable with the signatory employer under ERISA where "justice requires piercing the corporate veil," the "non-signatory is the 'alter ego' of the signing company," the two constitute a "single employer," or the interests of the non-signatory and signatory parties are "materially inseparable." *Trs. of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009). In each of these alter ego relationships, the two entities are, in reality, operating as one and the same. *Id.* As a result, "it is fair to say that the purported non-signatory is actually a signatory, and therefore an 'employer who is obligated to make contributions' within the meaning of" ERISA § 515. *Id.* at 776–77.

Regarding Stiles Consulting, Plaintiffs allege that, pursuant to the PLA, CBA, and ERISA, Stiles Consulting is an employer obligated to submit monthly reports and contributions to Plaintiffs under ERISA § 515. (Compl. ¶¶ 11–16.) They further allege that Stiles Consulting failed to submit reports and pay contributions for work performed by Defendants' employees for the months of September through December 2023. (*Id.* ¶ 18; Decl. Ricky Jeu ISO Mot. ("Jeu Decl.") ¶¶ 7–15, ECF No. 22; Decl. Jonathan Graham ISO Mot. ("Graham Decl.") ¶¶ 11–12, ECF No. 23.) Stiles Consulting's failure to submit reports and pay the required contributions violates ERISA § 515.

Regarding Stiles, Plaintiffs allege that he is individually liable as the alter ego of Stiles Consulting. (Compl. ¶¶ 19–20, 33–38.) Plaintiffs further allege that Stiles is the principal, sole owner, and manager of Stiles Consulting; used Stiles Consulting's funds for his own personal use; and did not maintain Stiles Consulting as a separate entity. (*Id.*) These allegations are sufficient to establish that Stiles's interests are inseparable from Stiles Consulting's interests such that the two were in reality operating as one and the same. Thus, construing Plaintiffs' allegations at true, it is fair to find Stiles an

"employer who is obligated to make contributions" under ERISA § 515. *NYCA*, 572 F.3d at 776–77.

Thus, Plaintiffs sufficiently plead a meritorious claim against Defendants to recover delinquent contributions under ERISA, and therefore the second and third *Eitel* factors favor entry of default judgment.

### 2. Remaining *Eitel* Factors

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Defendants. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. *See Eitel*, 782 F.2d at 1471–72. Plaintiffs would suffer prejudice absent entry of default judgment because they would otherwise have no recourse for Defendants' unpaid contributions. Further, as discussed below, the sum of money Plaintiffs seek is directly proportionate to the amount Defendants owe and failed to pay.

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of entering default judgment. *See id.* Plaintiffs' allegations are accepted as true on default, and Defendants may not now "challenge the accuracy of the allegations in the complaint." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Plaintiffs support their claims with evidence demonstrating Defendants owe Plaintiffs certain unpaid contributions, and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Further, nothing in the record suggests Defendants' failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. *See Eitel*, 782 F.2d at 1471–72. However, because Defendants' failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252,

255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Defendants on Plaintiffs' Complaint.

## C. REQUESTED RELIEF

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiffs seek to recover unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. (Mot. 1, 11–12.) The relief Plaintiffs seek is consistent with that requested in the Complaint and is thus permissible. (*See* Compl. ¶¶ 23,[3] 28, Prayer ¶¶ 1–2.)

Additionally, once liability is established through a defendant's default, a plaintiff must establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560. Plaintiffs cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002).

In an ERISA action to recover delinquent contributions, a successful plaintiff is entitled to the following forms of relief:

(A) the **unpaid contributions**,

(B) **interest** on the unpaid contributions,

(C) an amount equal to the greater of--

    (i) interest on the unpaid contributions, or

    (ii) **liquidated damages** provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable **attorney's fees and costs** of the action, to be paid by the defendant, **and**

---

[3] The Complaint includes two paragraphs numbered twenty-three. The Court here cites the first.

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added).

Plaintiffs seek an award totaling $54,631.75, consisting of $19,500.75 in unpaid contributions, $1,377.13 in interest, $1,744.79 in liquidated damages, and $32,009.08 in attorneys' fees and costs. (Mot. 1.)

  1. *Unpaid Contributions*

Under ERISA, upon judgment in favor of a plan, "the court shall award . . . the unpaid contributions." 29 U.S.C. § 1132(g)(2); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (requiring mandatory award under § 1132(g)(2) once plaintiff establishes the employer is delinquent, the plan provides for the award, and the court enters judgment against the employer). As allegations regarding damages are not accepted as true for purposes of a default judgment, a plaintiff must submit evidence supporting the damages sought. *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Courts have found declaration testimony sufficient to establish the amount of unpaid contributions, interest, and liquidated damages for purposes of a default judgment in an ERISA action. *Id.*

Plaintiffs seek unpaid contributions and working assessments totaling $19,500.75. (Mot. 1.) This figure comprises the following unpaid contributions and working assessments: $8,045.09 to the Welfare Fund; $736.73 to the Annuity Fund; $8,552.13 to the Pension Fund; $147.35 to the Training Fund; and $2,019.45 to the Union. (*Id.*; Compl. ¶ 23.)

Because Defendants did not submit the required monthly reports to the Trust Funds, Plaintiffs calculated these figures based on the Union's dispatch records, employee work histories obtained by the Union, and employee pay stubs indicating the hours worked during the time period at issue. (Graham Decl. ¶¶ 14, 16.) The Union's Business Manager used these records to calculate Defendants' unpaid contributions and working assessments according to the delinquency procedures in the PLA, CBA, and related Declarations of Trust. (*Id.* ¶¶ 1, 7, 15–16.) Plaintiffs provide declaration

testimony from the current and former Business Managers of the Union and the Trustee Chairmen of the Welfare Fund supporting these calculations and the related delinquency sums. (*Id.* ¶¶ 1, 9, 14–16; Jeu Decl. ¶¶ 1, 20–27, Ex. A ("Job History Stiles Consulting"), ECF No. 22.) The Court finds this evidence adequate to support the requested sums. *See Skelly, Inc.*, 389 F. Supp. 2d at 1226 (finding declaration testimony sufficient to establish the amount of unpaid contributions).

Accordingly, the Court finds that Plaintiffs are entitled to unpaid benefit contributions in the total amount of **$19,500.75**.

    2.    *Liquidated Damages & Interest*

Plaintiffs also seek liquidated damages totaling $1,744.79 and interest totaling $1,377.13. (Compl. ¶ 23; Mot. 1, 14–15.)

ERISA requires an award of liquidated damages for delinquent contributions at the rate provided for in the CBA, but not in an amount greater than 20% of the contributions. 29 U.S.C. § 1132(g)(2)(C); *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (affirming award of liquidated damages consistent with § 1132(g)(2)). The CBA, Trust Agreements, and/or the Funds' delinquency procedures provide for liquidated damages as follows: Welfare Fund and Annuity Fund at the greater of $750 or 10%; Pension Fund at 10%; and Training Fund at 20%. (Graham Decl. ¶ 15 (connecting the liquidated damages rates with related supporting documentation).) Based on these rates, Plaintiffs calculate the liquidated damages as follows: $804.51 to the Welfare Fund; $73.67[4] to the Annuity Fund; $837.14[5] to the Pension Fund; and $29.47 to the Training Fund. (*Id.* ¶ 16.) Similar to above, Plaintiffs provide adequate support for these figures, which add up to Plaintiffs' requested $1,744.79 in liquidated damages.

ERISA also requires an award of prejudgment interest, "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of

---

[4] Plaintiffs elect to recover 10% of the unpaid contributions for the Annuity Fund. (*See* Mot.)

[5] Plaintiffs seek a liquidated damages figure for the Pension Fund that is less than 10%. (*See* Mot.)

title 26." 29 U.S.C. § 1132(g)(2)(E). The CBA, Trust Agreements, and/or the Funds' delinquency procedures provide for interest assessed at 10% per annum for the Welfare and Annuity Funds, and 12% per annum for the Pension and Training Funds. (Graham Decl. ¶ 15.) Assessing these interest rates against the above noted delinquencies, Plaintiffs calculate the prejudgment interest as follows: $578.74 to the Welfare Fund; $46.86 to the Annuity Fund; $739.11 to the Pension Fund; and $12.42 to the Training Fund. (*Id.* ¶ 16.) As with the unpaid contributions and liquidated damages, Plaintiffs provide adequate support for these figures. (*See id.* ¶¶ 3–16; Jeu Decl. ¶¶ 19–26.) These interest figures add up to Plaintiffs' requested $1,377.13. (*Id.*)

Accordingly, Plaintiffs are entitled to recover **$1,744.79** in liquidated damages and **$1,377.13** in interest.

3. *Attorneys' Fees & Costs*

Plaintiffs also seek their reasonable attorneys' fees of $29,563.75 and costs of $2,445.33. (Mot. 19; Stafford Decl. ¶ 22.)[6]

Under ERISA, upon judgment in favor of a plan, "the court shall award . . . reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2); *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984). In this District, attorneys' fees awarded on default judgment are calculated according to the fee schedule provided in Local Rule 55-3. C.D. Cal. L.R. 55-3. However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment," as Plaintiffs have done here, and the Court "shall hear the request and render judgment for such fee as the Court may deem reasonable." *Id*.

To determine reasonable fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), courts use a "hybrid lodestar / multiplier approach." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). To calculate the lodestar amount, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with

---

[6] Plaintiffs request $2,44**6**.33 in the Motion, but $2,44**5**.33 in supporting declaration and billing summary. (*Compare* Mot. 19, *with* Stafford Decl. ¶ 22.) The Court proceeds with the figure that is represented in evidence.

11

the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust the figure based on a variety of factors.[7] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 430 n.3 (1983)). The lodestar figure is presumptively reasonable, and it should therefore be adjusted only in "rare" and "exceptional" cases. *Edmo*, 97 F.4th at 1168–69 (collecting cases). The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Plaintiffs seek $29,563.75 in attorneys' fees, which is the total of $14,349.25 for counsel Robein, Urann, Spencer, Picard & Cangemi APLC, and $15,214.50 for local counsel Tucker Arensberg LLP. (Mot. 19; Decl. Paula M. Bruner ISO Mot. ("Bruner Decl.") ¶¶ 12–13, ECF No. 24; Stafford Decl. ¶ 22.) These fees are based on hourly rates between $225.00 and $275.00 for attorneys, and between $80.00 to $180.00 for paralegals, with a total of 150.25 hours expended during the lifetime of this litigation between the two firms. (Mot. 19; Bruner Decl. ¶¶ 11–12, Ex. C ("Detailed Fees Transaction"), ECF No. 24-2; Stafford Decl. ¶¶ 17–18, Ex. C ("Billing Summaries"), ECF No. 25-1.)

Counsel declares that these rates "are reasonable and in line with the prevailing rates" throughout the country, "including in comparable legal markets." (Stafford Decl. ¶ 19.) Counsel further supports these rates with declarations establishing the attorneys'

---

[7] These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Edmo*, 97 F.4th at 1168 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

and paralegals' experience in the field. (*Id.* ¶¶ 12–17; Bruner Decl. ¶¶ 10–11.) Although Plaintiffs cite case support from only the Northern District of California, (*see* Mot. 17–19), the Court agrees, based on its own experience, that these rates are reasonable, including in the Central District of California. The Court similarly finds the hours expended well supported by counsels' declaration testimony and contemporaneous billing records. (*See* Detailed Fees Transaction; Billing Summaries); *Hensley*, 461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the hours worked and rates claimed"); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (requiring "detailed time records justifying the hours claimed"). Plaintiffs do not request a multiplier, and the Court finds one is not warranted in this case. Accordingly, the Court awards Plaintiffs **$29,563.75** in attorneys' fees.

Plaintiffs also seek $2,445.33 in litigation costs, for the filing fee and service on Defendants, which counsel declares required surveillance. (Mot. 19; Stafford Decl. ¶ 21.) Plaintiffs submit the billing records reflecting the breakdown of these costs. (Stafford Decl. ¶¶ 21–22; Billing Summaries.) As the costs are recoverable and supported by evidence, the Court awards Plaintiffs **$2,445.33** in costs. *See* 28 U.S.C. §§ 1920, 1923; C.D. Cal. L.R. 54-3.

    *4.    Summary of Relief*

In summary, the Court finds that Plaintiffs are entitled to recover $19,500.75 in unpaid contributions, $1,744.79 in liquidated damages, $1,377.13 in prejudgment interest, $29,563.75 in attorneys' fees, and $2,445.33 in costs. Plaintiffs are therefore entitled to recover the total sum of **$54,631.75**.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Entry of Default Judgment against Defendants. (ECF No. 21.) The Court **AWARDS**

Plaintiffs the total sum of **$54,631.75** in principal, attorneys' fees, and costs. The Court will issue judgment in accordance with this order.

**IT IS SO ORDERED.**

September 2, 2025

```
                       _____
                              OTIS D. WRIGHT, II
                         UNITED STATES DISTRICT JUDGE
```